IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES ESHLEMAN                                                              PLAINTIFF

V.                                              NO. 11-5287

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration              DEFENDANT

## MEMORANDUM OPINION

Plaintiff, James Eshleman, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed his application for DIB on September 14, 2009, alleging an inability to work since June 26, 2001, due to "Knee/shoulder/back/anxiety problems, Skin problems, HBP, dyslexis."  (Tr.113-119, 138, 147).  An administrative hearing was held on October 7, 2010, at which Plaintiff appeared with counsel and testified.  (Tr.  25-59).

By written decision dated March 29, 2011, the ALJ found that "through the date last insured (September 30, 2002), Plaintiff "had the following medically determinable impairments:

-1-

erythroderma/pityriasis rubra pilaris,[1] a history of skin cancer, and hypertension." (Tr. 17). The ALJ further found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months. (Tr. 17). Therefore, the ALJ held that Plaintiff did not have a severe impairment or combination of impairments. (Tr. 17).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional medical treatment notes, and denied the request on October 27, 2011. (Tr. 1-3). Subsequently, Plaintiff filed this action (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 2 ). Both parties have filed appeal briefs, Plaintiff filed a reply brief, and the case is now ready for decision. (Docs. 4, 6, 7).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence

[1]Pityriasis rubra pilaris - An uncommon chronic pruritic eruption of the hair follicles, which become firm, red, surmounted with a horny plug, and often confluent to form scaly plaques; it is most conspicuously noted on the dorsa of the fingers and on the elbows and knees and it associated with erythema, thickening of the palms and soles, and opaque thickening of the nails. Stedman's Medical Dictionary 1501 (28th ed. 2006).

-2-

exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

-3-

in light of his residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff makes the following arguments on appeal: 1) The ALJ erred in finding that Plaintiff's skin disorder was not severe; 2) The ALJ erred in disregarding the credibility of Plaintiff's subjective complaints; and 3) The ALJ erred regarding the weight given the opinions of Plaintiff's treating physician, Dr. Kim Emerson**.**

As indicated by the ALJ at the hearing held on October 7, 2010, the issue in this case is whether Plaintiff was disabled on or before September 20, 2002, the date last insured.  (Tr. 29).

**A.  Severe Impairments:**

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.   20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § § 404.1521, 416.921.  The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

Plaintiff argues that he suffered from a severe skin disorder:

> from at least September 2001 through roughly March 2003 and thereafter
> had intermittent flare-ups, and notably the Claimant's disability persisted
> beyond March 2003 as by that time, he was suffering from severe anxiety
> which was caused in part from the skin disorder, all of which is fully
> supported by the medical evidence of record.

(Doc. 4 at p. 6).  A review of the record indicates the following sequence of events occurred

-4-

between June 26, 2001, the alleged onset date, and September 30, 2002, the date last insured:

1. On June 26, 2001, Dr. Alice Ann Thompson, of Northwest Family Care, diagnosed Plaintiff with Cerumen Impaction (plugged ear); Nevus (mole), and Eczema ( a type of rash). (Tr. 284).

2. On July 3, 2001, Plaintiff was seen by Dr. Kevin St. Clair, at Ozark Dermatology Clinic, for him to evaluate a heavily pigmented lesion on Plaintiff's right scalp. (Tr. 250). The impression given was:

> 1. Probable heavily pigmented macular seborrheic keratoses-right frontal scalp, rule out malignant melanoma
> 2. Multiple benign lesions, primarily seborrheic keratoses[2] and intradermal nevi[3]
> 3. Localized patch of eczema-right parietal scalp, probably seborrhea dermatitis.

(Tr. 250).

3. On July 23, 2001, Dr. St. Clair performed an excision of the biopsy which demonstrated "lentigo maligna[4] of the right frontal scalp." (Tr. 249).

4. On September 27, 2001, Plaintiff visited Dr. St. Clair because of a development of a "new rash of his scalp, face, upper chest and back." (Tr. 246). Dr. St. Clair reported that it looked most like "extensive seborrheic dermatitis." (Tr. 246). On October 17, 2001, Dr. St.

---

[2]Seborrheic keratoses - Superficial, benign, verrucous, often pigmented, greasy lesions, consisting of proliferating epidermal cells, resembling basal cells, enclosing horn cysts; they usually occur after the third decade. Id. at 1026.

[3]Intradermal nevi - A nevi in which nests of melanocytes are found in the dermis, but not at the epidermal-dermal junction; benign pigmented nevi in adults are most commonly intradermal. Id. at 1318.

[4]Lentigo maligna - A brown or black mottled, irregularly outlined, slowly enlarging lesion resembling a 1. In which there are increased numbers of scattered atypical melanocytes in the epidermis, usually occurring on the face of older persons; after many years the dermis may be invaded and the lesion is then termed 1. Maligna melanoma. Id. at 1068.

Clair noted that Plaintiff's rash seemed to be significantly worsening, reporting a "very impressive eruption" involving the scalp, face, upper 2/3rd of the chest, abdomen, upper 2/3rd of the back, upper medial thighs and buttocks. (Tr. 245).  His impression was "Papulosquamous"[5] differential, including psoriasis. (Tr. 245).

5. On October 30, 2001, Dr. St. Clair reported that Plaintiff was "not improved" and that Plaintiff's disease was looking more like pityriasis rubra pilaris. (Tr. 243).  On November 27, 2001, Dr. St. Clair reported that "overall his disease is worsening." (Tr. 240).  He referred Plaintiff to Dr. Thomas Horne for evaluation at the UAMS. (Tr. 240).

6. After evaluation, Dr. Horne reported on December 27, 2001, that since his initial visit, Plaintiff had experienced roughly 25% improvement and that he believed his symptoms were consistent with pityriasis rubra pilaris. (Tr. 225).

7. On March 13, 2002, Dr. St. Clair noted that since he saw Plaintiff in November of 2001, Plaintiff had improved "quite a bit." (Tr. 238).  His impression was:

1) Erythroderma-peculiar gyrate pattern. Improving spontaneously.
2) History of melanoma of the scalp - currently NED.

(Tr. 238).  By June 12, 2002, Dr. St. Clair reported that overall, Plaintiff continued "to do well in the sense that improvement is occurring month by month and perhaps week by week.  The eruption is still present on the scalp, chest and patchy in a few other localized areas." (Tr. 237).  He concluded upon physical examination, that Plaintiff showed "overall marked improvement." (Tr. 237).  The impression was the same as the earlier visit. (Tr. 237).

---

[5]Papulosquamous - Denoting an eruption composed of both papules and scales. Id. at 1416.
Papule - A circumscribed, solid elevation up to 1 cm in diameter on the skin. Id.

-6-

8. On September 17, 2002, Dr. St. Clair reported that since he saw Plaintiff three months previously, he "continued to have slow improvement although his scalp is still the worst area of involvement..." (Tr. 268). At that time, Dr. St. Clair concluded that Plaintiff's eruption was now "more papulosquamous." (Tr. 268). There was no more evidence of the peculiar gyrate pattern, and he reported that it almost looked like seborrheic dermatitis on the scalp and face and psoriasis elsewhere. (Tr. 268).

9. It was not until November 15, 2002, a month and a half after the date last insured, that Dr. Kim Emerson began establishing care for Plaintiff. (Tr. 358). When Plaintiff first saw Dr. Emerson, it was reported that Plaintiff had skin lesions after a large section was removed from his scalp that was melanoma. She reported that Plaintiff stated his skin was still falling off of his scalp and that he still had red areas. (Tr. 358). She also reported that Plaintiff thought it was a nerve problem and that Xanax helped. (Tr. 358). In describing Plaintiff's skin condition, Dr. Emerson reported:

> SKIN: Skin/Subcutaneous-Inspection-Abn(+), mild ezmatic rash on scalp, red, flat rash on scalp. Scar from cancer biopsy. Color-pink

(Tr. 359).

Dr. Emerson's assessment was as follows:

> Hypertension
> Allergy syndrome
> History of Melanoma Skin reaction, neoplasm (malignant), skin
> Anxiety syndrome (tense or nervous).

(Tr. 359).

10. On December 16, 2002, Dr. St. Clair saw Plaintiff and reported that with respect to

-7-

the rash, Plaintiff felt that it was largely at a stand still "although it is perhaps showing very minimal slow improvement." His impression at that time was "Papulosquamous eruption of unknown etiology." (Tr. 267). Dr. Emerson thereafter saw Plaintiff on a regular basis through 2010. (Tr. 287-288, 298-299, 303-304, 307, 309-314, 316-317, 319, 322, 325, 328, 332, 336, 339, 343, 346, 348, 350, 352, 354, 356).

The ALJ found that as to Plaintiff's skin disorder, the medical evidence showed that this impairment imposed more than minimal limitations for less than the 12 consecutive months as required by the regulations. (Tr. 19). The ALJ referenced an October 5, 2009 Function Report - Adult, where Plaintiff reported that he experienced peeling and re-growing of his skin from October 2001 through February 2002 and then it went away slowly. (Tr. 20, 157). The ALJ concluded that he had no difficulty believing that Plaintiff's skin disorder caused severe limitations at one time, but that it seemed apparent from the medical evidence of record that Plaintiff's skin disorder was "severe" only briefly, and "certainly less than 12 consecutive months." (Tr. 20). The ALJ reported:

> Furthermore, while it is apparent that the claimant continued to experience symptoms related to his skin disorder subsequent to June 2002, Dr. St. Clair's observations and the claimant's reports to Dr. St. Clair lead me to conclude that this impairment did not impose more than minimal limitations subsequent to June 2002.

(Tr. 20).

The ALJ also discussed the opinion evidence, acknowledging the fact that Plaintiff's primary care physician, Dr. Emerson, opined in October 2010 that Plaintiff had been disabled since establishing care with her in 2002. (Tr. 20). Although the ALJ did not have before him Dr. Emerson's treatment records beginning in November of 2002, this Court has reviewed those

-8-

records, which were made a part of the record by the Appeals Council.  Since the date last insured is September 30, 2002, Dr. Emerson can only opine as to Plaintiff's abilities beginning in November 15, 2002, when Plaintiff initially saw her to establish care.  Even at that visit, although Plaintiff stated his skin was still falling off of his scalp and that he still had red areas, Dr. Emerson did not assess Plaintiff with any skin disorder at that time.  (Tr. 359).  It was not until January 27, 2003, that Dr. Emerson assessed Plaintiff with Eczema (a type of rash).  (Tr. 352).

With respect to Plaintiff's anxiety, the Court does not believe the record establishes severe anxiety during the relevant time period at issue, that is, before September 30, 2002.  Only on November 15, 2002, when Plaintiff initially saw Dr. Emerson, was there an assessment of "Anxiety syndrome (tense or nervous)."  Again, this does not establish a severe impairment of anxiety during the relevant time period.  In addition, as noted by Defendant, there is no opinion of a mental health specialist, or any clinical findings that support severe anxiety.  See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001)(a claimant's lack of attendance at counseling, daily activities, and intake notes may demonstrate that depression is situational).  The Court also notes that Xanax helped with Plaintiff's anxiety  (Tr. 358-59), and impairments controlled by treatment or medication is not considered disabling.  See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002).

Based upon the foregoing, the Court finds that there is substantial evidence to support the ALJ's finding that Plaintiff's skin disorder and anxiety were not severe impairments during the relevant time period.

AO72A
(Rev. 8/82)

**B.      Credibility Findings:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff contends that his impairments were disabling. After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms during the relevant time period were not credible to the extent they were inconsistent with finding that Plaintiff had no severe impairment or combination of impairments.  (Tr. 19). The ALJ carefully discussed each of Plaintiff's alleged impairments, and explained why they were not considered severe.

Based upon the foregoing, as well as the well-stated reasons given in Defendant's brief, the Court finds there is substantial evidence to support the ALJ's credibility findings.

**C.      Weight given to Treating Physician:**

Plaintiff contends that the ALJ erred by giving no weight to Dr. Emerson's opinion that

AO72A
(Rev. 8/82)

Plaintiff was disabled when she began to treat Plaintiff in 2002.   Beginning on September 18, 2009, Dr. Emerson opined:

> I agree that you should consider applying for social security disability.  I have established care with you in 2002.  You have not worked full time in that interim due to the back pain, leg pain, knee pain and the inability to do heavy lifting.  Your anxiety disorder has limited you from leaving your home and working outside of the home.  The dyslexia makes you unable to focus, concentrate and store memory and access old memory. You are unable to lift anything heavier that a coffee cup.  There should be no lifting, bending, twisting, pushing, pulling, kneeling, fingering, reaching over head, sitting or standing for over 10 minutes consecutively due to the spine pain and weakness.
> I don't feel with the dyslexia and generalized anxiety disorder you could retrain for a less sedentary job.

(Tr. 307).  Dr. Emerson continued to include this language in subsequent reports. (Tr. 288, 299, 301, 304).

At the time of the ALJ's decision, the record did not contain Dr. Emerson's medical records.  (Tr. 15-21).  The ALJ therefore properly determined that Dr. Emerson's opinion was not supported by the evidence.  The Appeals Council did , however, make Dr. Emerson's records a part of the record, and this Court has considered them.  When the Appeals Council has considered material new evidence and nonetheless declined review, the ALR's decision becomes the final action of the Commissioner.  The Court then has no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action.  See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, the Court's task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ.  As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing

-11-

court." <u>Riley v. Shalala</u>, 18 F.3d 619, 622 (8th Cir.1994).  However, once it is clear that the

Appeals Council considered the new evidence, then the Court must factor in the evidence and

determine whether the ALJ's decision is still supported by substantial evidence. This requires the

Court to speculate on how the ALJ would have weighed the newly submitted evidence had it

been available at the initial hearing. <u>Flynn v. Chater</u>, 107 F.3d 617, 621 (8th Cir.1997).  Thus,

the Court has endeavored to perform this function with respect to the newly submitted evidence.

As stated above, Dr. Emerson's records do not provide any evidence that would have

changed the outcome of the ALJ's decision, since they do not begin until November 2002, after

Plaintiff's last insured date.

Accordingly, the Court finds the ALJ properly evaluated the medical opinions in the

record.

**IV.    Conclusion:**

Based upon the foregoing, the Court finds there is substantial evidence to support the

ALJ's decision and accordingly, hereby affirms the ALJ's decision and dismisses Plaintiff's case

with prejudice.

DATED this 13ᵗʰ day of February, 2013.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE


-12-

AO72A
(Rev. 8/82)